CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

GALEN A. PHILLIPS (CABN 307644)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7110
    Email: Galen.Phillips@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) CASE NO. 25-CR-00146-SI |
|---|---|
|     Plaintiff, | ) |
| | ) MEMORANDUM IN SUPPORT OF UNITED |
| v. | ) STATES' MOTION FOR DETENTION |
| | ) |
| JOHNNY JAMESON, | ) Date:  Friday, June 20, 2025 |
| | ) Time:  10:30 a.m. |
|     Defendant. | ) Court: Courtroom E – 15th Floor |
| | ) Judge: Hon. Thomas S. Hixson |

On December 23, 2024, defendant Johnny Jameson killed a man and his dog, shooting them both from point-blank range. A convicted felon, Mr. Jameson is prohibited from possessing firearms and ammunition. And Mr. Jameson's failure to abide by the law caused another person's death. This conduct alone—the predicate conduct for the two charges he faces—merits Mr. Jameson's detention. But there is more.

Mr. Jameson's conduct last December is among a series of crimes and misconduct that punctuate nearly every year of his life. Mr. Jameson has nine prior convictions, including:

- A conviction in this District on September 18, 2020, for violating 18 U.S.C. § 922(g), stemming from an arrest in which Mr. Jameson forcefully resisted arrested and fought with multiple SFPD Officers; and

- A conviction in Solano County on April 4, 2018, for violating California Vehicle Code

2800.2(A) (Evade Peace Officer: Disregard Safety), stemming from Mr. Jameson fleeing law enforcement on the highway by driving more than 115 miles per hour, making unsafe lane changes, and following other vehicles too closely. Notably, two separate law enforcement agencies discontinued pursuit of Mr. Jameson, given his unsafe conduct, and Mr. Jameson was apprehended only after driving over a spike strip.

The last time Mr. Jameson appeared in this Court, he fell in Criminal History Category VI, beyond which there is no higher Criminal History Category. This criminal history alone—which reflects a sustained and wanton disregard for public safety—merits Mr. Jameson's detention. But there is more.

Mr. Jameson has more than thirty arrests. Those arrests include the following alleged conduct:

- An arrest on September 1, 2008, for inflicting corporal injury on a spouse or cohabitant;
- An arrest on April 18, 2009, for carjacking;
- An arrest on March 6, 2011, for spousal or ex-spousal battery; and
- Separate arrests on January 20, 2012; June 20, 2013; April 1, 2015; May 11, 2015; January 10, 2016; and November 23, 2017, for taking vehicles without the owner's consent.

A record such as this—which reflects persistent interactions with law enforcement in circumstances rife with danger to the community—merits Mr. Jameson's detention. But there is more.

Just over three months ago, Mr. Jameson had yet another encounter with law enforcement in circumstances rife with danger to the community. On March 7, 2025, at about 3:00 a.m. at the MSC Homeless Shelter in San Francisco, Mr. Jameson was yelling and screaming, disrupting other residents attempting to sleep. Security staff attempted to remove Mr. Jameson from the shelter. He in turn fought with the security staff, allegedly punching one guard in the face repeatedly and kicking him, too. When police attempted to arrest Mr. Jameson, he disregarded verbal commands, evaded physical restraint, and forcefully resisted arrested even after being pepper sprayed.

In 2019—before Mr. Jameson shot a man and his dog and before Mr. Jameson disrupted a homeless shelter and attacked its staff—this Court ordered Mr. Jameson detained in a case involving the same statutory violation charged here. *United States v. Johnny Jameson*, 19CR-00642-VC, Dkt. 11. In detaining Mr. Jameson, the Court reasoned as follows:

> First, the defendant has several prior felony convictions, including one for the same crime he is now charged with. Second, his probation has been revoked several times, and the alleged current offense happened while he was on supervised release. Third, the bail report indicates that the defendant fought with the police officers and resisted arrest.

*Id.*, at pgs. 1–2.

The decision to detain Mr. Jameson was correctly made in 2019. And it is even more appropriate today given the circumstances that bring Mr. Jameson before this Court yet again—the death of a man and his dog by bullets unlawfully possessed and shot by Mr. Jameson. Because there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community, Mr. Jameson should be detained.

## I. PROCEDURAL AND FACTUAL BACKGROUND

### a. THE CHARGED CONDUCT

On June 4, 2025, a grand jury returned an indictment charging Mr. Jameson with two violations of 18 U.S.C. § 922(g) (felon in possession of ammunition). Dkt. 1. The indictment's two charges concern 90 rounds of ammunition recovered from a Honda Civic that Mr. Jameson used to flee (Count One) and four shell casings recovered from the scene of the shooting (Count Two). In support of those two charges the government proffers[1] as follows:

First, the government alleges that, at about 3:00 p.m. on December 23, 2024, Mr. Jameson fatally shot a man on the 300 block of Selby Street in San Francisco. Before the shooting, Mr. Jameson was allegedly taunting the victim's two dogs, including punching one in the head. Moments later, Mr. Jameson shot and killed one of the dogs, Cookie.

---

[1] As this Court correctly acknowledged at Mr. Jameson's initial appearance on June 16, 2025, the parties to a detention hearing may proceed by proffer. Still, given defense counsel's strenuous objections and claims that he would appeal the Court's decision, the government recites the basis for this practice to supplement the record: The Federal Rules of Evidence do not apply to pretrial detention hearings. *See* 18 U.S.C. § 3142(f)(2)(B) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); *see also* FED. R. EVID. 1101(d)(3) (exception to application of Federal Rules of Evidence for "miscellaneous proceedings such as . . . considering whether to release on bail or otherwise."). And it is well-settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make a court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 743 (1987).

After an altercation with Cookie's owner, during which the two men wrestled over a gun, Mr. Jameson shot the dog's owner repeatedly. The bullet wounds sustained by the victim resulted in his death later that day. SFPD recovered four shell casing discharged from the gun shot by Mr. Jameson, providing the basis for Count Two. SFPD also recovered a sweater worn by Mr. Jameson that day, which DNA testing very strongly correlated with Mr. Jameson's DNA, and a personally manufactured semi-automatic firearm, as depicted in the following photograph:



Second, the government alleges that, after the shooting, Mr. Jameson fled the scene in a Honda Civic registered to Jameson's on-again-off-again partner, Witness 1, as reflected in surveillance footage from the area:



Mr. Jameson drove a little less than a mile from the shooting before the Honda apparently broke. Mr. Jameson abandoned the car on Cesar Chavez St., near the 101 on-ramp, where SFPD located the car within minutes of the shooting.



A subsequent search of the vehicle uncovered 90 rounds of 9mm ammunition, providing the basis for Count One. DNA testing of the ammunition very strongly correlated with Mr. Jameson's DNA. The search also uncovered an empty Glock box and a sweatshirt with a nearly identical design to the sweatshirt recovered from the shooting, as depicted in the following photographs:






**b. STATEMENT OF PRIOR PROCEEDINGS**

On June 16, 2025, at Mr. Jameson's initial appearance, the government moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(E) and (f)(2)(B).

As to § 3142(f)(1)(E), the government proffered that because the conduct giving rise to the charges—that is, Mr. Jameson's shooting a person and fleeing on December 23, 2024—necessarily involved the possession and use of a firearm as reflected in at least Count Two, which concerned shell casings discharged from the gun possessed and used by Mr. Jameson, this case is one that involved the possession and use of a firearm as contemplated by the plain language of 18 U.S.C. § 3142(f)(1)(E), entitling the government to a detention hearing. *See United States v. Watkin*s, 940 F.3d 152, 167 (2d Cir. 2019) ("Here, the conduct underlying [the defendant's] possession-of-ammunition charge plainly involved the use of a firearm. After all, [the defendant] discharged no fewer than nine bullets from an

1  illegally possessed firearm. Accordingly, the Government was . . . entitled to a detention hearing under
2  § 3142(f)(1)(E).").[2]

3  As to § 3142(f)(2)(B), the government proffered that there was a serious risk that, if released,
4  Mr. Jameson would threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a
5  prospective witness. The government identified Witness 1 as a witness it would call in its case-in-chief,
6  as Witness 1 was the registered owner of the Honda in which Mr. Jameson fled the shooting. And
7  Witness 1 stated in a recorded interview on January 15, 2025, that Mr. Jameson was using the Honda on
8  December 23, 2024, and that he told her he had been in an accident with the car, which explained why
9  the car had been impounded.[3] In 2016, while three months' pregnant, Witness 1 had previously sought a
10 restraining order against Mr. Jameson and claimed to have had "sixty prior domestic violence incidents"
11 with Mr. Jameson. Given this context, the government expressed concern that Witness 1 could be
12 subject to threat, injury, or intimidation by Mr. Jameson were he released.[4]

13 The Court held that the government was not entitled to a detention hearing pursuant to its proffer
14 under 18 U.S.C. § 3142(f)(1)(E). The Court held that government, however, had established a serious
15 risk that Mr. Jameson would threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a
16 prospective witness under 18 U.S.C. §§ 3142(f)(2)(B) and set a detention hearing for June 20, 2025.

17 **c. Mr. Jameson's Criminal History**

18 The government calculates Mr. Jameson's Criminal History Category as VI based on the
19 following convictions:

| Date | Court | Offense | Sentence | Points |
|---|---|---|---|---|
| 8/16/2007 | SF Super. Ct. | Possess Base/Rock Cocaine Base for Sale (11351.5 HS), felony Carrying a Concealed Weapon (12025A.2 PC), misdemeanor | 3 years formal probation, 90 days jail | 0 |

---

[2] The government did not cite *Watkins* in its argument, having only discovered the case after Mr. Jameson's initial appearance.

[3] In the same interview, Witness 1 stated that Mr. Jameson was unhoused, he did not have a key to her home, and he was not on the lease. Witness 1 also seemed to admit that she lacked moral suasion over Mr. Jameson.

[4] The government also indicated that certain witnesses to the shooting were unhoused individuals who also could be in danger if Mr. Jameson were released.

UNITED STATES' DETENTION MEMO.           7
25-CR-00146-SI

| | | | | |
|---|---|---|---|---|
| 3/12/2008 | SF Super. Ct. | Second Degree Robbery (211 PC), felony | 5 years probation, 27 days jail | 0 |
| 7/6/2011 | SF Super. Ct. | Felon/Etc. Possess Firearm (12021 (A)(1) PC), felony | 3 years probation, 9 months jail | 2 |
| 10/19/2011 | San Mateo Super. Ct. | Take Vehicle without Owner's Consent/Vehicle Theft (10851 (A) VC) | 120 days jail (originally sentenced to 90 days jail and 36 months probation) | 2 |
| 7/16/2014 | San Mateo Super. Ct. | Receive/Etc. Known Stolen Property (496 (A) PC), felony | 12 months probation, 24 months jail | 3 |
| 3/1/2016 | Alameda Super. Ct. | False Identification to Peace Officer (148.9 (A) PC), misdemeanor | 36 months probation, 6 days jail | 1 |
| 4/4/2018 | Solano Super. Ct. | Evade Peace Officer: Disregard Safety (2800.2 (A) VC), felony | 3 years prison | 3 |
| 9/21/2018 | Contra Costa Super. Ct. | Possess Controlled Substance (11377 (A) HS) | 60 days jail | 2 |
| 9/18/2020 | N.D. Cal. | Felon in Possession (18 U.S.C. § 922(g)) | 30 months' prison | 3 |
| Total criminal history points | | | | 16 (CHC VI) |

Mr. Jameson has more than thirty arrests including for inflicting corporal injury on a spouse or cohabitant, carjacking, spousal or ex-spousal battery, and taking vehicles without the owner's consent. Mr. Jameson was arrested by SFPD on January 15, 2025, for the above-described incidents on December 23, 2025, and he was released from custody on or about January 17, 2025. And, on March 7, 2025, Mr. Jameson was removed from the MSC Homeless Shelter at about 3:00 a.m. after disrupting its residents, attacking its staff, and forcefully resisting arrest.

## II.   LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. *Id*.

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

With respect to dangerousness, the Senate Report accompanying the Bail Reform Act explains that dangerousness is not limited to physical violence and includes continued criminal activity:

> The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.

S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3195; *see United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990) ("Danger, in this context, was not meant to refer only to the risk of physical violence.").

### III. THE DEFENDANT SHOULD BE DETAINED PENDING TRIAL

Mr. Jameson is charged with being a felon in possession of ammunition. Underlying those charges is the government's claim that Mr. Jameson shot and killed a man and his dog. In short, Mr. Jameson is accused of criminal conduct that reflects a willingness to end the lives of others—that is, the most serious risk members of the public face, their death. Mr. Jameson's conduct on December 23, 2024, was not an aberration but, unfortunately, part and parcel of a life of crime, as exemplified by numerous convictions, arrests, and violent encounters with members of the public and law enforcement.

Analyzed in light of the factors listed under the Bail Reform Act, there is no condition of release that can be set that will reasonably assure the safety of the community. Thus, Mr. Jameson should be detained.

### a. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

The seriousness of the offense supports detention. Mr. Jameson is charged with being a felon in possession of ammunition. This is his third such charge, the first two of which resulted in convictions. The circumstances surrounding each set of charges have only grown in severity. In his last federal case, Mr. Jameson was arrested with a firearm after fighting with SFPD. In his most recent case, the government alleges that Mr. Jameson killed a man while unlawfully possessing ammunition. This conduct merits detention.

### b. WEIGHT OF THE EVIDENCE

The weight of the government's evidence is strong. The forensic evidence against Mr. Jameson is overwhelming, including DNA evidence placing Mr. Jameson at the scene of the shooting, where the shell casings were recovered, and in the Honda, where the 90 rounds of 9mm ammunition and an empty Glock box were recovered. The registered owner of the Honda, Witness 1, has stated in a recorded interview that Mr. Jameson was using the vehicle on December 23, 2024, and that he told her he was in accident with the vehicle to explain why it was impounded. A sweatshirt recovered from the scene of the shooting nearly matches the unique design of a sweatshirt retrieved from the Honda. And SFPD recovered the Honda within minutes of the shooting.

### c. HISTORY AND CHARACTERISTICS OF THE PERSON

Mr. Jameson's criminal record is extensive. Before his last conviction, he fell within the highest Criminal History Category contemplated by the United States Sentencing Guidelines. This Court has previously, correctly held that based on his criminal history, among other things, Mr. Jameson should be detained pending trial, and the factors supporting that decision have only grown since that decision was made.

### d. NATURE AND SERIOUSNESS OF THE DANGER TO ANY PERSON OR THE COMMUNITY

As discussed above, Mr. Jameson undoubtedly poses a danger to the Bay Area at large given his extensive criminal record throughout the region and his ability to cause exceptionally grave harm to others. His conduct in March 2025 is illustrative. Indeed, within weeks of being released from state

custody, Mr. Jameson disrupted residents of a homeless shelter in the wee hours of the morning. He attacked staff, punching and kicking one guard. And then he forcefully evaded arrest. This conduct along with his history of arrests and convictions all show his penchant to present a danger to the community.

## IV.   CONCLUSION

Based upon the foregoing, the government has established by clear and convincing evidence that no conditions of release will reasonably assure the safety of any person or the community. Accordingly, the government requests the Court order Mr. Jameson detained prior to trial.

The government further requests that, if the Court is inclined to release Mr. Jameson on conditions, it stay its order for such time as to permit the government to file a motion for revocation of the order of release under 18 U.S.C. § 3145(a).

DATED:  June 18, 2025                                           Respectfully submitted,

                                                                CRAIG H. MISSAKIAN
                                                                United States Attorney


                                                                GALEN A. PHILLIPS
                                                                Assistant United States Attorney