CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

GALEN A. PHILLIPS (CABN 307644)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7110
Email: Galen.Phillips@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHNNY JAMESON,<br><br>Defendant. | Case No. 3:25CR00146-SI<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: July 31, 2026<br>Hearing Time: 11:00 a.m.<br>Courtroom: 1, 17th Floor<br><br>Hon. Susan Illston |

The government submits this sentencing memorandum in support of a within Guidelines sentence of 33 months' imprisonment.

On December 23, 2024, Johnny Jameson shot a man and his dog. Both died. The evidence shows that Jameson—a convicted felon and prohibited person—repeatedly shot a gun, fled the scene, and likely discarded the gun.

On July 31, 2026, this Court will sentence Jameson for his conduct. Jameson will not be sentenced for homicide, as he has not admitted to murder as he believed he was acting in self defense. But his conduct is nonetheless serious and dangerous. And it was entirely avoidable.

His conduct occurred against the backdrop of a lengthy criminal history that includes nine prior convictions, including two firearm-related offenses, and over 30 arrests. Nothing in Jameson's record suggests that he has internalized the risks his behavior creates for the public or for himself.

For these reasons, and consistent with the § 3553(a) factors—particularly the need to protect the community and promote respect for the law—the government recommends a within Guidelines sentence of 33 months' imprisonment, followed by three years of supervised release, and a $200 special assessment.

## I. The Offense Conduct

Based on the evidence, it appears Johnny Jameson and the decedent became involved in a physical fight on December 23, 2024. The fight followed an interaction involving the decedent's dogs during which Jameson was allegedly bitten twice.

As a result of those altercations, Jameson shot the decedent and his dog. Both died.

Jameson fled in a Honda Civic. He abandoned the car a few blocks away. The gun that Jameson shot was never recovered.

Officers recovered four 9mm casings at the scene that Jameson had possessed (and shot). Officers also recovered an AR-style PMF pistol from the scene. That gun contained DNA from both Riley and Jameson, with Riley as the primary contributor. Officers also recovered ammunition from the abandoned Honda.

Both the recovered casings and ammunition had traveled in interstate commerce.

At the time of the incident, Jameson was a convicted felon prohibited from possessing ammunition.

## II. The Sentencing Guidelines Calculation

The parties the following offense level applies:

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2K2.1 | 14 |
| c. | Acceptance of Responsibility, U.S.S.G. § 3E1.1 | -2 |
| d. | Total Offense Level | 12 |

Jameson falls within Criminal History Category V. Thus, the Guidelines recommend a sentence of 27 to 33 months of custody.

///

## III. Argument

### A. Standard

The overarching goal of a sentencing court is to impose a sentence that is sufficient to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment." *United States v. Ressam*, 679 F.3d 1069, 1088-89 (9th Cir. 2012) (en banc); *see United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); 18 U.S.C. § 3553(a). The Court should begin the sentencing process by correctly calculating the applicable Guidelines range and must "remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). The Court should then consider the factors outlined in Section 3553(a) to determine the appropriate sentence. *Ressam*, 679 F.3d at 1089.

If the Court determines that a sentence outside of the Guidelines range is warranted, the Court must ensure that the "justification is sufficiently compelling to support the degree of the variance." *Id.* (internal quotation omitted).

The Section 3553(a) factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocations training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established in the Guidelines;

(5) any pertinent policy statement by the Sentencing Commission;

(6) the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims.

*See* 18 U.S.C. § 3553(a)(1)-(7).

**B. Government Recommendation**

With these principles in mind, the government respectfully recommends a sentence of 33 months in custody, three years of supervision to follow, and a $200 special assessment.

**a. Among Felon-in-Possession Offenses, Jameson's Conduct Is Exceptionally Serious.**

The nature and circumstances of this offense place it at the most serious end of conduct captured by 18 U.S.C. § 922(g). Felon-in-possession cases often involve passive or technical possession—firearms found in storage areas, forgotten ammunition, or a gun discovered in a backpack, such as in Jameson's prior federal case, where he received 30 months' custody.

This case is different. Jameson armed himself, discharged ammunition, and fled, leaving behind four 9mm casings, a mortally wounded victim, and a dead dog. While the exact sequence of events remains partially unclear, what is clear is that the ammunition Jameson unlawfully possessed was used in a violent confrontation resulting in two deaths. This level of harm is well beyond the core conduct typically seen in § 922(g) cases. A high-end Guidelines sentence is necessary to account for the seriousness of the offense and to promote respect for the law.

**b. Jameson's Criminal Record Suggests He Is Incorrigible.**

Jameson's criminal history is substantial: nine criminal convictions and more than thirty arrests, with custodial terms ranging from days to years. His convictions include second-degree robbery, felon-in-possession of a firearm, vehicle theft, receiving stolen property, providing false identification, and fleeing from law enforcement with disregard for public safety. This is not a record of isolated lapses—it reflects long-standing, repeated criminal behavior.

At his last federal sentencing, Jameson fell in Criminal History Category VI. Although the current calculation places him in Category V, this reduction reflects Guideline mechanics, not a meaningful improvement in Jameson's conduct or decision-making. The pattern is unmistakable: previous sentences, including federal custody, have not deterred Jameson. His willingness to again arm himself—despite a clear legal prohibition—and to place himself in volatile situations resulting in violence demonstrates Jameson remains a danger to the community.

///

**c. Specific Deterrence Requires a High-End Sentence**

A high-end Guidelines sentence is needed to deter Jameson specifically. Lesser sentences, including prior custodial terms, have not changed his behavior or reduced the risks he poses. His repeated willingness to possess ammunition and weapons despite clear legal restrictions underscores the need for a sentence that carries sufficient weight to deter future criminality. A 33-month sentence appropriately reflects the need for specific deterrence and public protection under § 3553(a).

**IV. Victim Issues**

Consistent with the PSR, the government agrees that there is no statutory victim for Jameson's convictions. PSR, ¶ 12. Still, a member of the decedent's family has contacted the United States Attorney's Office and plans to attend Jameson's sentencing. The government believes that this individual should have a chance to be heard if he asks to be heard at sentencing. *See United States v. Smith*, 967 F.3d 198, 215 (2d Cir. 2020) ("But even if [defendant] is correct that KN1 did not qualify as a statutory 'victim' . . . Congress has not placed arbitrary limits on what information a district court may consider at sentencing.").

**CONCLUSION**

For these reasons, the government recommends the Court sentence Jameson to 33 months in custody with three years of supervised release to follow and order him to pay a $200 special assessment.

DATED: July 24, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/ Galen Phillips

GALEN A. PHILLIPS
Assistant United States Attorney